IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 10-40014-JTM

RITO VASQUEZ-GARCIA,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Rito Vasquez-Garcia's sixteen motions in limine. Defendant appeared in person and through counsel at a hearing on November 24, 2014. The court will address the motions in turn.

### I. Background

Defendant is charged with one count of conspiracy to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846, and seven counts of using a communication device in facilitating that conspiracy in violation of 21 U.S.C. § 843(b). A total of thirty defendants were indicted in connection with this conspiracy.

Law enforcement investigated the activity of this drug trafficking conspiracy from June 2008 to April 2009. According to the government, the investigation revealed the following. Pascual Vasquez-Villa was transporting and distributing large quantities of methamphetamine for defendant. The primary source of methamphetamine was located in Phoenix, Arizona. Simultaneously, Adan Molina was transporting and

distributing large quantities of methamphetamine from the same source in Phoenix. According to the government, Molina worked for defendant in the same conspiracy until June 2006, when Molina branched out into his own trafficking operation. Defendant denies involvement in this conspiracy.

Two cellular phones, Target Phone 11 and Target Phone 13, played an important role in this investigation. They were the subject of wiretap orders issued by the court. DEA agents at a listening post in St. Louis, Missouri, monitored Phone 11 from March 19, 2009, to April 17, 2009, and Phone 13 from May 1, 2009, to May 11, 2009. The phones were allegedly used by Vazquez-Villa and defendant during trips to the supplier in Phoenix.

On June 19, 2009, the investigation was "taken down" with search warrants, one of which was executed at defendant's Great Bend residence. Defendant was not home at the time, but was in Mexico with family. Agents recovered four firearms from the residence, but no drugs or currency.

A grand jury returned an eight-count Indictment as to defendant on February 10, 2010 (Dkt. 1). He remained in Mexico until July 2012, and was arrested in the Western District of Texas on July 25, 2012. (Dkt. 5). On separate but related indictments, Vazquez-Villa was convicted at trial and Molina pled guilty.

## II. Legal Standard

The motion in limine provides a trial court the opportunity "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*,

188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). The power to make evidentiary rulings in limine is not expressly provided by statute or rule; it stems from the court's authority to administer and try cases. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see* FED. R. EVID. 103(d), 104(c), 402, 403, 611(a). Such rulings may increase judicial efficiency, but many evidentiary rulings "should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)). An in limine evidentiary ruling is subject to change, at the court's discretion, "when the case unfolds" in trial. *Luce*, 469 U.S. at 41-42.

## III. Analysis

### 1. Defendant's Motion to Suppress Intercepted Conversations and Evidence Obtained Therefrom (Dkt. 118)

Defendant challenges the admissibility of cell phone conversations intercepted from Phones 11 and 13 while they were outside the District of Kansas. (Dkt. 118). The court issued a wiretap warrant for each phone while the phone was in Kansas. (Dkt. 118-1). DEA agents monitored the phones from a listening post in St. Louis. Defendant argues that material intercepted while both the phones and the listening post were outside the District exceeds the jurisdictional scope of the warrants and should be suppressed pursuant to 18 U.S.C. § 2518(10), along with any evidence derived therefrom. The court disagrees.

Investigative wiretaps are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2516 *et seq.* Upon application and finding a statutory cause for the wiretap, a court

> may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction).

18 U.S.C. § 2518(3). The Tenth Circuit has clarified that a communication is intercepted, for the purposes of § 2518(3), either "where the tapped telephone is located" or "where the contents of the redirected communication are to first be heard." *United States v. Tavarez*, 40 F.3d 1136, 1138 (10th Cir. 1994). Here, the communications were all heard in St. Louis, Missouri. At issue here is whether a wiretap issued on a mobile phone qualifies as a "mobile interception device" under § 2518(3).

The Tenth Circuit has not addressed the meaning of "mobile interception device" in this context, but the Seventh Circuit has. In *United States v. Ramirez*, 112 F.3d 849 (7th Cir. 1997), a Western District of Wisconsin judge ordered a wiretap on a cell phone associated with an alleged drug conspiracy in that district. The phone was owned by an individual under investigation in the district. The phone was located in the district at the time the order was issued. The owner then gave the phone to another person who took it to Minnesota and used it in connection with the same conspiracy. The listening post was also in Minnesota, outside the issuing district. The court found it irrelevant

where the phone ended up, because it was in the district at the time a valid warrant was issued and the warrant did not limit the geographic scope of the surveillance.

As in this case, the issue in *Ramierz* turned on the interpretation of "mobile interception device" in the § 2518(3) parenthetical. The court found that a literal reading of § 2518(3) makes very little sense in the context of cell phone surveillance. *Id.* at 852. The court referenced the legislative history of Title III and determined that a "mobile interception device" applies "to both a listening device installed in a vehicle and to a tap placed on a cellular or other telephone instrument installed in a vehicle." *Id.* at 852 (quotation omitted). The court went on to conclude that "[t]he emphasis in 'mobile interception device' falls, it seems to us (there are no other published decisions on the point), on the mobility of what is intercepted rather than on the irrelevant mobility or stationarity of the device." *Id.* at 853. The *Ramirez* court concluded that the order issued in the Western District of Wisconsin was valid for the calls made while the phone and listening post were outside the district because § 2518(3) allows the surveillance to be conducted anywhere in the United States when the interception of a cell phone is authorized while the cell phone is in the district of the court issuing the wiretap warrant.

Here, defendant relies on a special concurring opinion in *United States v. North*, 735 F.3d 212, 218-19 (5th Cir. 2013) (DeMoss, J., concurring), to support the proposition that "mobile interception device" means the device intercepting the communication, and thus does not permit tapping a cell phone when it leaves the court's jurisdiction.

The court finds the reasoning of the Seventh Circuit in *Ramirez* to be sound. The parenthetical in § 2518(3) was added in 1986, while cell phone technology was in its infancy. The underlying principles of physical surveillance, more common at that time, are instructive in corroborating the court's view.

The D.C. Circuit addressed a physical listening device under § 2518(3) in *United States v. Glover*, 736 F.3d 509 (D.C. Cir. 2013). The *Glover* court evaluated the installation of a physical listening device on a vehicle located outside the court's district at the time of installation. The wiretap warrant was found facially invalid because it authorized placement of the device while the vehicle was outside the court's jurisdiction. The court noted that any such device cannot be properly authorized unless the property on which it is to be installed is located inside the authorizing court's jurisdiction at the time of authorization. *Glover*, 736 F.3d at 514. The court further noted that, according to a Senate Judiciary Committee report, the purpose of the statute's parenthetical is to "ensure that warrants remain effective in the event a target vehicle is moved out of the issuing judge's jurisdiction *after* a warrant is issued, but before a surveillance device can be placed in the vehicle." *Id.* (emphasis in original) (citing S. Rep. No. 99-541, at 106(a) (1986)). The *Glover* court reinforced its interpretation of the statute by noting that FED. R. CRIM. P. 41, which partially implements the statute, allows a magistrate to issue a warrant for a person or property outside the district if the person or property is located within the district at the time of issuance, but might move out of the district before the warrant is executed. FED. R. CRIM. P. 41(b)(2).

*Ramirez* illustrates the proper application of § 2518(3) to mobile communication technology. The court recently adopted the *Ramirez* view of "mobile interception devices" in *United States v. Dahda*, 2014 WL 1493120 (D. Kan. Apr. 2, 2014). In *Dahda*, the defendant challenged the validity of nine wiretap orders as facially invalid because they did not specify that a listening post must be maintained in the District of Kansas if and when the target phones left the District. As in this case, the defendant in *Dahda* argued the *North* concurrence, asserting that the statute allows interception anywhere in the country only where the listening device itself is mobile. In *Dahda*, the court analyzed § 2518 as the *Ramirez* court did, concluding that the mobility of the listening device was irrelevant when the phones being intercepted were mobile. The parenthetical of § 2518(3) extends the jurisdictional scope of the order to anywhere in the United States that mobile phones may travel if they were in the district at the time the order is issued, regardless of the listening post location. In *Dahda*, the mobile phones were in the District at the time the orders were issued, and conversations intercepted while the phones were outside the District were within the jurisdictional limitations of the order.

The same is true here. The wiretaps on Target Phones 11 and 13 were issued while the phones were in the District. Therefore, conversations intercepted while the phones were outside the District do not violate the statute and are admissible. Defendant's Motion (Dkt. 118) is DENIED.

**2. Defendant's Motion to Suppress Conversations Pursuant to an Arizona Wiretap and Evidence Derived Therefrom (Dkt. 125)**

Arizona authorities conducted a wiretap on another phone, Target Phone 2, intercepting calls involving defendant. As with Target Phones 11 and 13, agents intercepted calls from Phone 2 while it was outside Arizona. Defendant argues that interceptions made while the phone was not in Arizona should be suppressed. Defendant's argument is identical to that in Dkt. 118.

For the same reasons described in the court's ruling on Dkt. 118, defendant's Motion (Dkt. 125) is DENIED.

**3. Defendant's Motion to Suppress Intercepted Conversations Where Related Documentation Was Unlawfully Unsealed (Dkt. 123)**

In April and May 2009, the court issued orders granting the wiretaps on Target Phones 11 and 13. A grand jury returned indictments on thirty defendants in this conspiracy between April 2009, and June 18, 2009. Defendant's residence was searched pursuant to a warrant on June 17, 2009. On June 26, 2009, about a week after most of the arrests in this investigation, the court granted the government's motions to unseal the "wiretaps, extensions thereof, and all related documentation" for Target Phones 11 and 13. (Dkt. 123, at 1) (citing Case No. 09-50008-RDR (Dkts. 123-1; 123-2)). The orders did not state the reasons for granting the motions to unseal. Defendant argues that the unsealing violated Title III and that the recordings and their derivatives should be suppressed. The government concentrates its argument on the unsealing of the wiretap application or order, governed by 18 U.S.C. § 2518(8)(b), but the unsealing in question

8

here is that of the actual recordings and all extensions thereof (Dkt. 123-2), which are governed by 18 U.S.C. § 2518(8)(a).

An "aggrieved person" may move for suppression of intercepted communications in violation of Title III. 18 U.S.C. § 2518(10). An "aggrieved person" is one "who was a party to an intercepted . . . communication or a person against whom the interception was directed." 18 U.S.C. § 2518(11). Section 2518 governs procedure for Title III communication interceptions, including the sealing of wiretap recordings.

Wiretap recordings must be authorized by a proper order, made available to the issuing judge immediately upon the expiration of the time period specified in the order, then sealed under the judge's direction. 18 U.S.C. § 2518(8)(a). "The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of any wire, oral, or electronic communication evidence derived therefrom under subsection (3) of section 2517." 18 U.S.C. § 2518(8)(a). Section 2517(3) allows disclosure of wiretap information through "testimony under oath or affirmation at a proceeding held under the authority of the United States . . . ." Section 2517(3) is the only provision in the chapter describing how wiretap information is to be disclosed to the public forum. Thus, a court may not unseal wiretap communications, placing them in the public record, without a satisfactory explanation. *See* 18 U.S.C. § 2518(8)(a). Unsealing for discovery purposes, such as making copies for defendants, or for use in trial is a satisfactory explanation. *See id.* However, "once the trial level proceedings to which the unsealing order pertained have concluded, the tapes should be resealed in order to preserve their integrity should their

9

admission be sought in another trial – either in another case or in a retrial of the same case after appeal." *United States v. Scopo*, 861 F.2d 339, 347 (2d Cir. 1988).[1]

Violation of any § 2518  provision that plays a central role in the statutory scheme of Title III requires suppression of the wiretap evidence. *United States v. Giordano*, 416 U.S. 505, 524-28 (1974) ("the critical inquiry is whether there has been a 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'"). Section 2518(10)(a) extends its suppression mandate beyond constitutional violations, which are themselves included in § 2518(10)(a)(i), to include violations of the statute itself in (ii) and (iii). *Id.* Suppression for violation of § 2518 does not require prejudice to the aggrieved party. *Id.* The sealing requirements of Title III are central to the statute's purposes of protecting individual liberty interests and preserving evidence. *See United States v. Cline*, 349 F.3d 1276, 1284 (10th Cir. 2003).

Here, the recordings from Target Phones 11 and 13 were unsealed for use in the Vazquez-Villa trial on June 26, 2009. *United States v. Cellular Telephone*, No. 09-50008, Dkt. 10 (D. Kan. June 26, 2009); *United States v. Cellular Telephone*, No. 09-50016, Dkt. 5 (D. Kan. June 26, 2009). The government contends that the unsealing was necessary to facilitate discovery in all related cases. "Because there was no other way for the

---

[1] *Accord U.S. v. Long*, 917 F.2d 691 (2d Cir. 1990); *U.S. v. Boyd*, 208 F.3d 638 (7th Cir. 2000) (citing *Long* and *Scopo*); *U.S. v. Gigante*, 979 F. Supp. 959 (S.D.N.Y. 1997); STEPHEN L. HARWOOD, SURVEILLANCE ISSUES 107, United States Department of Justice (2005); *see also In re Applications of Kansas City Star*, 666 F.2d 1168 (8th Cir. 1981).

government to reasonably comply with all of the discovery orders of the court as to each of the thirty defendants indicted as a result of this investigation, 'good cause' existed for the unsealings of Target Phones 11 and 13." (Dkt. 146, at 10). The facilitation of discovery or use in a trial is a satisfactory explanation for unsealing the recordings.

However, it is still unclear whether the original disks were *resealed* after use in the Vazquez-Villa trial. The presence of the seal on the original disks is prerequisite to admissibility of their contents in this trial. If the disks have remained unsealed, then § 2518(8) is violated and the evidence will be suppressed. However, a ruling suppressing the evidence on such basis at this time is premature because the disks have not yet proved to be unsealed. The court defers its ruling until trial.

Defendant's Motion (Dkt. 123) is therefore DENIED.

## 4. Amended Motion to Suppress Intercepted Conversations, and Evidence Derived Therefrom, Because the Recordings Were Not Immediately Sealed (Dkt. 134)

This motion replaces Dkt. 124 and also concerns the sealing of the disk for Target Phones 11 and 13. Defendant claims that sealing delays violate Title III's "immediate" sealing requirement and that any evidence on or derived from the recordings should be suppressed.

Target Phone 11 was sealed by the court on April 23, 2009, six days after the authorizing order expired on April 17, 2009. The government explains the chain of custody of Target Phone 11, showing that it was sealed by the DEA on April 21, sent to the DEA Topeka Post of Duty where it was received on April 22, and delivered to and sealed by the court on April 23.

The authorizing order for Target Phone 13 was effective until May 30, 2009. Monitoring of Target Phone 13 terminated on May 11, 2009, the data disk was packaged and shipped on May 27, 2009, to the DEA Topeka Post of Duty, where it was received on May 28, 2009, and delivered to and sealed by the court on the same day.

Wiretap recordings must be sealed by the court immediately following the expiration of the underlying order. 18 U.S.C. § 2518(8)(a). The immediate sealing requirement may also be met if the government provides a "satisfactory explanation" for any delay in sealing. *Id.* The satisfactory explanation prong "requires that the Government explain not only why a delay occurred but also why it is excusable." *United States v. Ojeda Rios*, 495 U.S. 257, 265 (1990). A "satisfactory explanation" may include the unavailability of the issuing judge, intervening weekends and holidays, or a need to prepare paperwork. *Cline*, 349 F.3d at 1284 (citations omitted). Violation of the statute's sealing requirements is grounds for suppression of the recordings and evidence derived therefrom. *See id.*

The Target Phone 13 disk was sealed prior to the expiration of the underlying order and therefore suffered no delay. Thus, only the disk for Target Phone 11 is in question. It was delayed six days. According to the government, the Target Phone 11 recordings were recovered from the wire room on April 21, four days after recording terminated. (Dkt. 149, at 7). The recordings then made an immediate journey to Topeka, and subsequently, the court. Thus, shipping and delivery days, April 22 through April 23, are adequately explained delays. As to the four days the recording sat in the wire room, the government explains that "[t]he government's knowledge of any gaps

between the sealings of the wiretaps and their respective expirations and/or the clerk's office not filing the sealing order signed by the judge is not worthy of pause." (Dkt. 173, at 5). The foregoing is not an adequate explanation of why the recordings remained in the recording room for four days after the order expired. The government's explanation implicitly states that the delay is excusable because it is insignificant. The court disagrees. The purpose of Title III precludes the argument that short delays are insignificant – Title III mandates the protection of the integrity of recorded wiretap evidence, which cannot be ensured by any particular counting of days. However, it is conceivable that the four-day delay here could be supported by a satisfactory explanation. The government has provided no explanation. The court awaits such explanation to determine whether it is satisfactory under § 2518(a). A ruling to suppress the recordings from Target Phone 11 and evidence derived therefrom is premature at this time.

Defendant's motion (Dkt. 134) is DENIED.

## 5. Defendant's Motion Regarding the Admissibility of Opinion Testimony by Law Enforcement (Dkt. 119)

Doug Garman, a government agent involved in these cases, testified at the Vazquez-Villa trial as an expert. His testimony included generalized interpretations of phone conversations obtained by wiretap. Defendant argues that Garman's testimony about the general meaning of terms within the conversation is inadmissible because it is not proper expert testimony subject matter, is not proper lay opinion testimony, violates FED. R. EVID. 704(b), and should be excluded in any event by Rule 403.

13

*A. Agent Garman's Opinion Testimony is Admissible*

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and method to the facts of the case.

FED. R. EVID. 702. One purpose of Rule 702 is to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Law enforcement agents may qualify as experts under Rule 702 in the area of drug trafficking if their knowledge, skill, or training so permits. *United States v. Roach*, 582 F.3d 1192, 1206-07 (10th Cir. 2009). A case agent may be used as an expert, but such testimony must be carefully examined under Rule 403. *United States v. Mendoza*, 236 F. App'x 371, 384 (10th Cir. 2007) (unpublished).

Defendant argues that case agents should not be allowed to testify as to the general meaning of phone conversations because such testimony is too unreliable under Rule 702. Defendant cites Agent Garman's testimony from the Vazquez-Villa trial:

Page 2, Line 23, Vasquez-Garcia: "There are 20, 20, 3 of 20, 1 of 15, and 1 of 20. 8, 5." "85?" Vazquez-Villa states. The counting referring to the 20, 20, there are 3 of 20, adds up to the number of 85. It's a short conversation; *therefore, there's nothing to refer it to in the conversation*. However, investigators believe that it's the counting of drug proceeds and the total denominations of proceeds being counted at that time.

Case No. 09-40061-SAC (Dkt. 114, at 623). Defendant argues that the testimony is not the product of reliable methods applied in a reliable manner. In support, defendant

argues that Garman "lacked confidence" in his interpretation, as indicated by the statement: "therefore, there's nothing to refer it to in the conversation." (Dkt. 119, at 4).

Agent Garman qualified as an expert on these matters in the Vazquez-Villa trial. He is expected to do so again here. As a qualified expert, his opinion testimony about the meaning of the intercepted phone calls is admissible. Any testimony beyond his own opinion is inadmissible. The last sentence of the testimony quoted above will not qualify as expert opinion material because Garman relies on other investigators' opinions, not his own training and expertise. The remainder of Garman's testimony above draws upon his own experience and training interpreting communications between narcotics traffickers regarding drugs or money and is proper expert testimony. The court therefore need not address whether the testimony should be excluded as improper lay opinion.

*B. Rule 704(b)*

Defendant argues that Garman's testimony or similar testimony from other case agents will violate FED. R. EVID. 704(b). "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Richard*, 969 F.2d 849, 854-55 (10th Cir. 1992). The testimony in question does not express a final conclusion or inference that defendant knowingly conspired to possess and intended to distribute methamphetamine or knowingly and intentionally

used the phones in furtherance of the conspiracy. Rule 704(b) does not bar the testimony.

*C. Case Agent Testimony Not Excluded by Rule 403*

It is most likely that any Rule 403 problem will be related to the expert testimony that "investigators believe that it's the counting of drug proceeds" because it is not applying Agent Garman's expertise, but, rather, the expertise of the investigators. The investigators should be offering their own testimony to that end. It is neither lay opinion nor expert opinion testimony, and may cause unfair prejudice to defendant. However, it is unclear whether the government intends to offer testimony through Agent Garman that extends beyond his own opinion. Any efforts to offer such testimony can be addressed at trial. Agent Garman will otherwise be allowed to testify on his own opinions.

Defendant's Motion (Dkt. 119) is DENIED.

## 6. Motion to Exclude Testimony of Samuel Juarez-Sanchez (Dkt. 101)

The government elicited the following testimony from another indicted co-conspirator, Samuel Juarez-Sanchez, at the Vazquez-Villa trial:

Q. And you knew Rito [Vasquez-Garcia] to be involved in the drug business as well. Correct?

A. You'd hear rumors, but I wasn't completely sure.

Q. Do you know that Adan at one time purchased methamphetamine from Rito?

A. No, sir.

16

> Q. Your understanding was that the defendant and Rito were going to Phoenix for drug-related business, because that is what the defendant had told you that they were going to do. Correct?
>
> A. He told me they were going to go to the city of Phoenix, but not specifically for that. That's what I thought.

(Dkt. 101, at 1). Defendant believes that the government expects Juarez-Sanchez to testify at his trial. He argues that (1) the above "rumors" testimony should be excluded because it is hearsay without an exception, (2) the same is improper character evidence, and (3) Juarez-Sanchez's opinion that the Phoenix trip was drug related is improper lay opinion testimony because it was based on the "rumors" and not Juarez-Sanchez's own perception.

*A. "Rumors" As Hearsay*

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Hearsay statements are inadmissible unless they qualify for an exception provided by statute or rule. FED. R. EVID. 802. Juarez-Sanchez's testimony that "[y]ou'd hear rumors" refers to statements made by others, not Juarez-Sanchez, that would be offered to prove the truth of those "rumors." (Dkt. 101, at 1). The statement is therefore inadmissible hearsay unless it qualifies as nonhearsay under Rule 801(d) or for a hearsay exception under Rule 803 or 804.

The government asserts that Juarez-Sanchez will testify against defendant only from personal knowledge attained through observations, interactions, and conversations with other co-conspirators. It also asserts that Juarez-Sanchez previously told the government he knew that defendant was a drug dealer. It argues that, "under

duress of threats and compelled to testify at Vasquez-Villa's trial, [Juarez-Sanchez] substantially softened his testimony to "rumors" only." (Dkt. 154, at 7). The proffered testimony from Juarez-Sanchez's personal knowledge of observation and interactions, not from "rumors," is not hearsay.

*i. Nonhearsay Co-Conspirator Statements*

The government contends that the "rumors" testimony is also admissible as co-conspirator admissions or, alternatively, as statements adopted by an opposing party.

A statement offered against an opposing party "made by the party's co-conspirator during and in furtherance of the conspiracy" is admissible nonhearsay. FED. R. EVID. 801(d)(2)(E). Statements are made in furtherance of the conspiracy if they "explain events of importance to the conspiracy in order to facilitate its operation," explain to other co-conspirators the status of the conspiracy, "serve to maintain trust and cohesiveness" among the co-conspirators, or identify another co-conspirator. *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987) (quotations omitted). The offering party must prove a conspiracy involving the declarant and the nonoffering party by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); FED. R. EVID. 104(a).  A co-conspirator's recounting of statements by other co-conspirators is likewise admissible under Rule 801(d)(2)(E). *See United States v. Townley*, 472 F.3d 1267, 1274-75 (10th Cir. 2007).

If the government lays a proper foundation, as described above, statements made by co-conspirators may qualify as non-hearsay. The court finds it premature to rule on

the admissibility of the rumors testimony because the government may lay a proper foundation for its admissibility in the context of trial.

### ii. Nonhearsay Adopted Statements

Statements offered against an opposing party that "the party manifested that it adopted or believed to be true" are admissible nonhearsay. FED. R. EVID. 801(d)(2)(B). If the government lays a foundation showing that defendant adopted or believed the rumors referenced by Juarez-Sanchez, the rumors are admissible. While the government has not done so, defendant has not proved that it cannot lay the foundation described above. The court therefore finds it premature to exclude the rumors on this ground.

### B. "Rumors" As Character Evidence

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1). If Juarez-Sanchez testifies only that defendant was rumored to be a drug trafficker, the testimony may be barred by Rule 404(a)(1) because it would suggest that defendant acted in this case in conformity with an existing character trait – that he was prone to traffic drugs and did so here. However, if the testimony indicates only that defendant was rumored to be involved in *this* drug trafficking conspiracy, then it is not offered for the purpose of proving that he acted in accordance with his trait, only for proving he participated in this conspiracy.

### C. Lay Opinion Testimony

A lay witness may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to

determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. A lay opinion is "rationally based on the perception of the witness" if he has "first-hand knowledge of the events to which he is testifying." *United States v. Garcia*, 944 F.2d 1499, 1507 (10th Cir. 1993) (quotation omitted). The lay opinion may be based on what the witness "heard unless what he heard is excluded as hearsay." *Id.*

Juarez-Sanchez's testimony about the Phoenix trip is admissible to the extent that he testifies from personal knowledge, forming an opinion based on his own perceptions. However, because a ruling on the "rumors" testimony may affect a ruling on the opinion of the Phoenix trip, the court defers ruling until the context of trial.

The government is not expected to present the "rumors" testimony, and if it does, may be able to lay a foundation for its admissibility. Therefore, the court defers ruling on this motion until trial. Defendant's Motion (Dkt. 101) is DENIED.

## 7. Defendant's Motion to Exclude Evidence of His Trip Home to Mexico (Dkt. 102)

The government intends to offer testimony that defendant concealed himself in Mexico to avoid arrest in this matter. According to the government, defendant traveled to Mexico in June 2009 and remained there until he was arrested pursuant to a warrant in this matter at a Texas border crossing on July 25, 2012. Defendant claims he went to Mexico to attend his sister's wedding and remained there to tend to family matters. The government argues that defendant remained in Mexico because his sister warned him that law enforcement was looking for him. Defendant asserts he returned to the United States in 2012 to "clear his name." (Dkt. 102, at 2). Defendant argues that the probative

value of evidence of his stay in Mexico is substantially outweighed by the danger of unfair prejudice and should be excluded.

The Tenth Circuit has long acknowledged that "the fact of an accused's flight . . . and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982); *accord United States v. Brown*, 190 F. App'x 704, 709-10 (10th Cir. 2006) (unpublished). Admissibility of flight evidence does not require "evidence of a direct causal link between an accused's knowledge of an indictment or a warrant and the accused's flight." *Brown*, 190 F. App'x at 710 (citing *United State v. Lepanto*, 817 F.2d 1463, 1467 (10th Cir. 1987)). Admissibility "turns on whether it gives rise to a permissible inference of the accused's consciousness of guilt . . . ." *Id.*; *accord United States v. Akers*, 215 F.3d 1089, 1103 (10th Cir. 2000). "[F]light evidence carries with it a strong presumption of admissibility." *Martinez*, 681 F.2d at 1256.

Defendant argues that his Mexico trip was not "flight" because the government cannot establish that he traveled to avoid prosecution. Defendant cites *United States v. Nolan*, 450 F.2d 934 (10th Cir. 1971) for the proposition that no consciousness of guilt can be inferred from an individual's flight when flight occurs before any indication of forthcoming charges. The defendant in *Nolan* fled from state custody before being charged with a federal crime, and the government offered no evidence that defendant knew of forthcoming federal prosecution. The trial court instructed the jury on flight despite the government's failure to present any evidence that defendant was motivated

to avoid federal prosecution. The Tenth Circuit found the flight instruction was issued in error.

Here, defendant traveled to Mexico in June 2009 – well before his February 2010 indictment. However, defendant left Great Bend shortly before the execution of warrants in connection with this case. Thus, the lapse of time between June 2009 and the indictment does not foreclose a reasonable inference that defendant left Great Bend with knowledge of some indication of a forthcoming charge. Traveling to and remaining in Mexico for three years are facts related to the forbearance of defendant's prosecution. The government plans to prove that defendant's wife informed him of the federal prosecution. The government need not prove a causal link between defendant's trip to Mexico and his knowledge of the indictment for the evidence to be admissible. The timing of defendant's trip compared to the execution of the warrants and following indictment, along with proffered testimony that he knew of the indictment and did not return to his home in Great Bend for more than three years, give rise to a *reasonable inference* that defendant fled the District of Kansas to avoid prosecution. Thus, unlike *Nolan*, it is reasonable that the government may present evidence that defendant was motivated to avoid the forthcoming federal prosecution.

Evidence of the trip is admissible as evidence of defendant's consciousness of guilt. The weight of the evidence will be determined by the jury. Accordingly, the court will not exclude evidence of defendant's trip to Mexico at this time. Defendant's Motion (Dkt. 102) is DENIED.

**8. Defendant's Motion to Exclude Renato Garcia-Medina's Testimony (Dkt. 103)**

Renato Garcia-Medina, who pled guilty in connection with this conspiracy, testified for the government at the Vazquez-Villa trial. He told the government that he was afraid to testify because he and his family were threatened by a phone call to one of his relatives shortly after he decided to testify. (Dkt. 103, at 1). Garcia-Medina learned of the threat by letter from a family member.

Defendant expects the government to introduce Garcia-Medina's testimony to connect defendant to the threats. He challenges the admissibility of testimony about the threats, arguing that (1) the threats to Garcia-Medina's relatives are hearsay without an exception, (2) Garcia-Medina's testimony about the threats is hearsay within hearsay without an exception, and (3) the threat testimony should be excluded by Rule 403 because a lack of connection between the threat and defendant risks unfair prejudice that substantially outweighs its probative value.

As discussed below, whether the call is hearsay is irrelevant because the letter from the family is hearsay that would qualify only for the Rule 803(3) exception. The letter may only be used under FED. R. EVID. 803(3) to show that the family was afraid, not *why* they were afraid.

Any out-of-court statement used to prove the truth of the matter asserted therein is inadmissible as hearsay unless an exception applies. FED. R. EVID. 801(c), 802. The threatening phone call is hearsay. Garcia-Medina learned of the call's contents through the letter, another hearsay statement. Garcia-Medina's testimony about the phone call's contents are hearsay within hearsay. "Hearsay within hearsay is not excluded by the

rule against hearsay if each part of the combined statements conforms with an exception to the rule." FED. R. EVID. 805. Thus, the contents of the phone call are only admissible through Garcia-Medina's testimony if the letter also qualifies for a hearsay exception.

"A statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition" is an exception to the rule against hearsay. FED. R. EVID. 803(3). Rule 803(3) allows declarations of the condition of the mind, but not of the reason for the state of mind. *United States v. Joe*, 8 F.3d 1488, 1493 (10th Cir. 1993) (Rule 803(3) permitted declarant's statement that she was "afraid sometimes," but not that her fear was caused by a belief that her husband might kill her). Thus, the letter is admissible only to show its author's state of mind – that his family member was fearful, not that the fear was caused by a threatening phone call. Garcia-Medina can testify that he was a fearful witness and that he received a letter from a family member indicating that its author was fearful. He cannot mention the phone call as the *reason* for the fear under Rule 803(3) and *Joe*.

Even if the phone call is nonhearsay, its contents are not admissible through the hearsay letter because the latter only qualifies for an exception that limits its admissibility, rendering the call itself inadmissible. For the foregoing reasons, defendant's Motion (Dkt. 103) is GRANTED to the extent that testimony about the phone call is inadmissible, but testimony about the letter is admissible to show the family member was in fear.

**9. Defendant's Motion to Exclude Statements in Violation of the Confrontation Clause (Dkt. 107)**

Defendant challenges the admissibility of (1) conversations between police and other alleged co-conspirators or confidential informants, (2) anticipated expert testimony by Agent Doug Garman that he received intelligence in the case indicating defendant was selling narcotics from his burrito cart, (3) an anonymous letter to police claiming defendant and others trafficked narcotics, (4) testimony regarding the traffic stop of Miguel Soto, and (5) testimony that plaintiff was in Great Bend the day before search warrants in this case were executed in June 2009.

Defendant argues that the above testimony is either hearsay without an exception or violates the Confrontation Clause. The Confrontation Clause prohibits the admission of testimonial hearsay unless the declarant is unavailable and the defendant previously had the opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). A statement is testimonial if its declarant "would reasonably expect it to be used prosecutorially." *Id.* at 51-52 (citation omitted). Statements made to police in the course of interrogation are testimonial unless the primary purpose is to assist in an ongoing emergency. *Davis v. Washington*, 547 U.S. 813, 823 (2006). Statements "offered for the limited purpose of explaining why a Government investigation was undertaken" are properly offered for non-hearsay purposes. *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987) (quotation omitted).

The government contends it will offer the above testimony only for non-hearsay purposes, avoiding any Confrontation Clause violation. (Dkt. 140, at 2-3). It further

asserts that it will not offer testimony regarding the Soto traffic stop without Mr. Soto's own testimony, satisfying the Confrontation Clause. The anticipated testimony will be admissible with an appropriate limiting instruction.

For the foregoing reasons, defendant's Motion (Dkt. 107) is DENIED.

## 10. Defendant's Motion to Exclude Expert Testimony of Profile Evidence (Dkt. 109)

Agent Doug Garman testified as an expert at the Vazquez-Villa trial regarding typical behavior patterns of members in drug trafficking organizations. Garman testified that "among drug traffickers there is 'a paranoia or definitely a heightened awareness for the presence of law enforcement,' and that it is common for them to notify each other of the presence of authorities." (Dkt. 109, at 1) (quoting Agent Garman from the Vazquez-Villa trial, Case No. 09-40061-SAC (Dkt. 114, at 601, 621)). The Government intends to introduce Garman's expert testimony at defendant's trial. (Dkt. 140, at 14). Defendant challenges the testimony as improper profile evidence because it is unhelpful to a jury under Rule 702 and also under Rule 403.

Profile evidence consists of "indicators of a specific illegal activity" and profiles are generally "used to detect crime, before the police have investigated or gathered evidence." *United State v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992). In the Tenth Circuit, it is more important that the evidence qualify under some Federal Rule of Evidence than whether it is actually "profile" evidence. *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991). Law enforcement agents may qualify as experts under Rule 702 in the area of drug trafficking if their knowledge, skill, or training so permits. *Roach*, 582 F.3d at 1206-07. Expert testimony may describe indicia of drug trafficking

activity. *United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009). The Tenth Circuit has allowed expert testimony as to why drug dealers bring guns to drug deals; the differences between crack users, user dealers, and dealers; what qualifies as a large amount of drugs on the street; whether a particular amount of drugs would be intended for personal use or distribution; and "whether documents had characteristics consistent with records of a drug business." *United States v. Shepard*, 188 F.R.D. 605, 607-08 (D. Kan. 1999) (quotations and citations omitted).

Garman previously qualified as an expert on drug trafficking and will likely do so again. While the examples from *Shepard* involve characteristics of trafficking more concrete and measurable than "paranoia," Garman's testimony is within the scope of Rule 702 because it describes, from his training and experience, the characteristics of a typical drug trafficking organization. If proper foundation is laid and the testimony is helpful to the jury, it is admissible. A ruling on the evidence is deferred until it can be evaluated in the context of trial.

Defendant's Motion (Dkt. 109) is DENIED.

## 11. Defendant's Motion to Exclude Evidence That He Owned Firearms (Dkt. 122)

The government intends to introduce evidence that defendant owned firearms, which defendant seeks to exclude as unduly prejudicial. The government recovered four firearms, ammunition, and removable magazines from defendant's home.

A court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. "To be unfairly prejudicial, the evidence must have an undue tendency to suggest a decision on an

improper basis, commonly, though not necessarily, an emotional one." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted). "In the context of drug-trafficking crimes, firearms are frequently tools of the trade." *United States v. King*, 632 F.3d 646, 655 (10th Cir. 2011) (quotation omitted). "Drug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers." *United States v. Nicholson*, 983 F.2d 983, 990 (10th Cir. 1993).

Defendant argues that firearms recovered at his residence could not have been tools of the trade because no drugs or money was seized on the premises. He contends that evidence of his lawful ownership of firearms that were not recovered in the context of drug operations is unduly prejudicial.

The probative value of the evidence is that defendant owned the quantity and type of firearms appropriate for use as tools of the trade in a drug operation. That value may be substantially outweighed by the danger that jurors will jump to the conclusion that defendant is guilty because he owns firearms. This is especially true because the firearms were not recovered in the context of a drug operation. Neither money nor drugs were in the same building as the guns. Further, some jurors may find gun ownership to have more nefarious connotations than may be the case with defendant. Thus, the risk that the evidence may tend to *improperly* suggest to the jury that defendant is guilty substantially outweighs its probative value as "tools of the trade." Accordingly, the evidence is inadmissible and defendant's Motion (Dkt. 122) is GRANTED.

**12. Defendant's Motion to Exclude Evidence Related to Adan Molina's Separate Organization (Dkt. 120)**

According to the government, Adan Molina admitted trafficking narcotics with defendant and Pascual Vazquez-Villa in this conspiracy beginning in late 2005 or early 2006. (Dkt. 147, at 2). Molina was stopped by police in June 2006 while driving through New Mexico. According to the government, police seized $42,540.00 in U.S. Currency during the stop, and the money was connected to defendant's alleged drug conspiracy. The government alleges that Molina then began acquiring his own customers and parted ways with defendant's trafficking operation.

Defendant argues that evidence of Molina's separate trafficking organization, which includes currency and narcotics seized during the execution of search warrants in June 2009, is irrelevant and should not be admitted. The government responds that it does not intend to offer evidence of Molina's separate operation against defendant, but only Molina's testimony regarding his drug activities with defendant prior to June 2006.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. "[E]vidence essential to the context of the crime is intrinsic." *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011) (quotation omitted). Intrinsic evidence is relevant, but still subject to Rule 403. *See United States v. Robles*, 434 F. App'x 736, 740-41 (10th Cir. 2011) (unpublished).

The government intends to offer Molina's testimony about his involvement with defendant prior to June 2006. Molina can testify from personal knowledge about

defendant's involvement in the alleged conspiracy, providing context for the alleged crime. The proffered testimony is relevant because it will tend to make more or less probable that defendant agreed to possess and distribute methamphetamine or used phones in furtherance of the conspiracy. Further, the risk of unfair prejudice will be minimal if the testimony is limited to operations with defendant. The government does not intend to offer evidence of Molina's independent operations.

Defendant's Motion (Dkt. 120) is therefore DENIED.

### 13. Defendant's Motion to Compel Discovery (Dkt. 121)

Defendant seeks to compel production of any surveillance information that may have been gathered by the "National Security Agency ("NSA") mass call-tracking program, the Hemisphere Project, or stingray devices (collectively, the "surveillance methods")." (Dkt. 121, at 1). Defendant cites, and attaches as Exhibit 1, an amicus brief submitted by the American Civil Liberties Union ("ACLU brief") in an unrelated case in the Northern District of California. Defendant claims that court-ordered surveillance of cell phones is covertly supplemented by the surveillance methods and that law enforcement is trained to conceal the methods by altering records. He argues that information about the covert surveillance could render the wiretaps on Target Phone 13 invalid and could therefore lead to the suppression of key evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

The government has an affirmative duty to disclose evidence materially favorable to the defense under *Brady* and its progeny. *Browning v. Trammell*, 717 F.3d 1092, 1094 (10th Cir. 2013). "Evidence is favorable if it is exculpatory or impeaching." *Id.*

(quotation omitted). Evidence is subject to *Brady* disclosure if defendant can "show the 'favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id.* at 1095 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "[A] *Brady* request does not entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an *in camera* inspection of the government's files in every case." *United States v. Phillips*, 854 F.2d 273, 278 (7th Cir. 1988); *accord United States v. Hughes*, 931 F.2d 63 (10th Cir. 1991) (unpublished).

Defendant offers no evidence that the alleged surveillance methods were used in his investigation. He identifies no fact indicating that his phone was subject to the surveillance methods in question. He relies solely on the ALCU brief and generalized speculation implied by various "news leaks," referring to stories in the media about surreptitious surveillance used to prosecute cases in the United States. (Dkt. 181, at 51).

The government claims it has no such information. The NSA was not a part of the investigation team in this case, and defendant has not attempted to subpoena the information. The government has no duty to produce documents it does not possess. Defendant is free to subpoena the NSA or local law enforcement for the evidence he seeks.

Defendant's Motion (Dkt. 121) is DENIED.

## 14. Defendant's Motion to Exclude Evidence Related to Eleuterio Reyes (Dkt. 110)

Eleuterio Reyes is defendant's cousin. Defendant seeks to exclude statements from an interview of Juan Carlos Garcia, an individual in federal custody, about Reyes's

involvement in drug trafficking. The government does not intend to introduce this evidence without the live testimony of Reyes and/or Juan Carlos Garcia. (Dkt. 139, at 2). The motion is therefore moot.

Defendant's Motion (Dkt. 110) is DENIED.

## 15. Defendant's Motion to Exclude False Drug Dog Alert During the Traffic Stop of Miguel Soto (Dkt. 108)

Miguel Soto, an individual connected to this conspiracy, was pulled over by the Kansas Highway Patrol on December 7, 2008. During the stop, Soto said he was dropping off someone else's vehicle in Great Bend and was going to drive defendant's vehicle back to Kansas City. Also during the stop, drug dogs alerted to narcotics, but none were present at the scene. Defendant seeks to exclude evidence of the drug dog alert as irrelevant or unduly prejudicial.

The government does not intend to introduce any such evidence absent the live testimony of Juan Carlos Garcia. The court defers its ruling until trial and has instructed the government to seek an admissibility ruling prior to offering the testimony.

Defendant's Motion (Dkt. 108) is DENIED.

## 16. Defendant's Motion For Access to His Pretrial Services Report (Dkt. 170)

Defendant moves for the disclosure of his pretrial services report. The government provided defendant a copy of the report on November 24, 2014, before the hearing on these motions. The motion (Dkt. 170) is therefore DENIED as moot.

IT IS ACCORDINGLY ORDERED this 23rd day of December, 2014, that defendant's motions (Dkts. 101, 102, 107, 108, 109, 110, 118, 119, 120, 121, 123, 125 134, and 170) are DENIED.

IT IS FURTHER ORDERED that defendant's motion (Dkt. 122) is GRANTED.

IT IS FURTHER ORDERED that defendant's motion (Dkt. 103) is GRANTED IN PART, to the extent that testimony about the phone call is inadmissible, but testimony about the letter is admissible to show the family member was in fear.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE